**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN BRANDT, | : | |
| | : | Civil Action No. 10-4223 (FLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| EVAN FEIBUSCH, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff pro se
John Brandt
Trenton Psychiatric Hospital
100 Sullivan Way
P.O. Box 7500
West Trenton, NJ 08628

**WOLFSON**, District Judge

    Plaintiff John Brandt, a civilly-committed mental patient confined at Trenton Psychiatric Hospital in Trenton, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint, or from sources of which this Court may take judicial notice,[1] and are accepted as true for purposes of this review.

In 2001, Plaintiff was charged, in two indictments, with burglary, criminal mischief, and criminal trespass.  He was subsequently diagnosed with bipolar disorder, manic type with psychotic features, and with an antisocial personality disorder. In 2003, the trial judge found him competent to stand trial on both indictments and not guilty by reason of insanity. Thereafter, he was involuntarily committed and placed on Krol[2]

---

[1] This Court will take judicial notice of the dockets of this and other courts in cases related to this Petition.  See Fed.R.Evid. 201; Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999) (federal court, on a motion to dismiss, may take judicial notice of another court's opinion, not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity).

[2] See State v. Krol, 68 N.J. 236, 344 A.2d 289 (1975) (detailing periodic review procedures for persons found not guilty by reason of insanity and committed for mental health treatment); N.J.S.A. 2C:4-8(b)(3) ("If the court finds that the defendant cannot be released with or without supervision or conditions without posing a danger to the community or to himself, it shall commit the defendant to a mental health facility approved for this purpose by the Commissioner of Human Services to be treated as a person civilly committed.").

2

status.  He remains committed and on Krol status as the result of the required periodic reviews.  See generally Brandt v. McQuaide, 2010 WL 5343233 (D.N.J. Dec. 20, 2010) and In the Matter of the Commitment of J.B., 2009 WL 1658494 (N.J.Super.App.Div. June 16, 2009).

Before this Court, Plaintiff alleges that, at a Krol status hearing apparently in late 2008, it was determined that he was entitled to be transferred from Ann Klein Forensic Center to a hospital in a less restrictive setting for the purposes of treatment.  Plaintiff alleges that he was not transferred to Trenton Psychiatric Hospital for a period of almost four months, until March 2009, which he characterizes as an unreasonable delay, not based on professional judgment, that deprived him of his right to be treated in the least restrictive environment.

Plaintiff alleges that, after he was transferred to TPH, he was not properly moved to a level of supervision with more privileges and less supervision, and that he therefore brought a civil rights action challenging his placement.  See Brandt v. Trenton Psychiatric Hospital, Civil No. 09-5367 (D.N.J.).  Plaintiff alleges that as a result of this litigation he was labelled a "troublemaker" by some staff members.

Plaintiff alleges that for approximately one year, prior to March 2, 2010, he was housed in the Raycroft building, in a private room, where he was making good progress.  Plaintiff

alleges that on March 2, 2010, he met with his treatment team and they informed him that he was continuing to do well and that there was no significant change in his treatment status.  Later that day, however, Plaintiff was "administratively" transferred to another unit, the Lincoln Complex, and placed in the Intensive Treatment Unit ("ITU").  Plaintiff alleges that his previous treatment team was unaware of the planned transfer and did not agree with the transfer decision.  Plaintiff alleges that he was not personally examined by the "administrative defendant" that authorized the transfer to the ITU ward.  Plaintiff alleges that the transfer was punitive, because of Plaintiff's civil rights action and other grievances and complaints about patients' rights.  Plaintiff alleges that the transfer was intended to thwart his progress and to induce him to act out so that he could be transferred back to AKFC, a more secure facility.

Plaintiff alleges that after he was transferred to ITU, his personal belongings were locked away by program coordinator Bruce Booth, and he had no access to them.  Plaintiff alleges that he, therefore, had no access to personal hygiene products.  Plaintiff alleges that he was placed in a room with a psychotic roommate and with no private bathroom.

Plaintiff alleges that he met with his treatment team soon after the transfer, and that "they understood that he knew the law backwards and forewords [sic], and pointed to his medical

chart.  The treatment team and Dr. Rizvi also disputed and were disappointed that plaintiff was going to court every three months and not the standard sixth [sic] months that they make <u>Krol</u> status patients complete." (Complaint, ¶ 40.)  Plaintiff alleges that, while on the ITU ward, he was not permitted to attend his regular treatment programs that had been established by his previous treatment team.[3]

Plaintiff alleges that, on March 2, 2010, the day of his transfer to the ITU, he broke several day room windows out with a chair.  Plaintiff alleges that he was thereafter forcibly injected by the nursing supervisor with antipsychotic medication, not for medical reasons, but for the convenience of the staff. Plaintiff alleges that he was not evaluated by a psychiatrist before the antipsychotic medication was forcibly administered.

Plaintiff alleges that when he approached a staff member the next day, for hygiene products, the staff member said there were none and then said, "You should break some more windows." Plaintiff alleges that he then broke some more windows. Plaintiff alleges that the nursing supervisor and another nurse (identified as Jane Does I and II) again forcibly medicated him without any psychiatric oversight.

---

[3] Plaintiff does not state how long this alleged deprivation of treatment programs lasted.  However, based on the other allegations of the Complaint, it appears to have lasted only a few days, during which time he states he was breaking windows and being involuntarily medicated.

Plaintiff alleges that on March 4, 2010, the Raycroft building administrator, Marie Champagne, made a remark to Plaintiff that he did not have his "office" anymore, a reference to the fact that, while at Raycroft, Plaintiff had a laptop computer and printer.  Plaintiff contends that this remark is evidence of the fact that administrators at TPH considered Plaintiff a problem because of his litigation and grievances. Plaintiff alleges that he then was transferred to a more secure hospital, Ann Klein Forensic Center, while other more dangerous patients were not.[4]  Plaintiff considers this evidence that he was transferred for non-clinical reasons.  In addition, Plaintiff notes that Defendant Bruce Booth filed criminal charges against Plaintiff, for breaking the windows, instead of rendering appropriate medical treatment.

Plaintiff alleges the following claims based upon the facts described above:  (1) that the delay in transferring him from AKFC to TPH, in March 2009, by Evan Feibusch and the "administrative defendants,"[5] violated his right to be treated in the least restrictive setting, (2) that the "administrative defendants" violated his right to be treated in the least

------

[4] Plaintiff refers specifically to one patient who, on March 4, 2010, broke a window in an attempt to escape and assaulted several other patients, causing lacerations.

[5] The characterization "administrative defendants" is Plaintiff's.  He nowhere identifies the individuals he means to include in the term "administrative defendants."

restrictive setting when they transferred him internally, in
March 2010, to the Lincoln Complex and placed him on the ITU ward
without a clinical or medical justification, (3)-(4) that the
"administrative defendants" violated his right to procedural due
process by not having regulations or hospital policies in place
and by not providing him process prior to the 2010 transfer,
(5)-(6) that he was deprived of his substantive and procedural
due process rights when he was forcibly medicated without
psychiatric oversight, and (7) that Defendant Evan Feibusch has
retaliated against Plaintiff and harassed him, in 2010, because
of his litigation and grievances, instead of exercising
professional judgment in making treatment decisions.

Plaintiff names the following persons as defendants:  TPH
Chief Psychiatrist Evan Feibusch, TPH Medical Director Lawrence
Rossi, TPH Chief Executive Officer Teresa McQuaide, ITU Clinical
Psychiatrist Amer Rizvi, ITU Program Coordinator Bruce Booth, ITU
Social Worker Karen Johnson, Lincoln Complex Administrator Donald
Pattershaw, Raycroft Building Administrator Marie Champagne,
Dept. of Human Services Commissioner Jennifer Velez, Division of
Mental Health Services Director Jonathan Poag, John and Jane Does
1 through 19.[6]

---

[6] The only fictitious defendants referred to in the body of
the Complaint are Jane Does I and II, a nurse and nursing
supervisor who allegedly subjected Plaintiff to forcible
medication with antipsychotic drugs.

Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a

complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking

9

for plausible grounds to infer an agreement does not
impose a probability requirement at the pleading stage;
it simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence of
illegal agreement.  And, of course, a well-pleaded
complaint may proceed even if it strikes a savvy judge
that actual proof of those facts is improbable, and
"that a recovery is very remote and unlikely." ...  It
makes sense to say, therefore, that an allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice.  Without more, parallel conduct does
not suggest conspiracy, and a conclusory allegation of
agreement at some unidentified point does not supply
facts adequate to show illegality.  Hence, when
allegations of parallel conduct are set out in order to
make a § 1 claim, they must be placed in a context that
raises a suggestion of a preceding agreement, not
merely parallel conduct that could just as well be
independent action.

The need at the pleading stage for allegations
plausibly suggesting (not merely consistent with)
agreement reflects the threshold requirement of Rule
8(a)(2) that the "plain statement" possess enough heft
to "sho[w] that the pleader is entitled to relief."  A
statement of parallel conduct, even conduct consciously
undertaken, needs some setting suggesting the agreement
necessary to make out a § 1 claim; without that further
circumstance pointing toward a meeting of the minds, an
account of a defendant's commercial efforts stays in
neutral territory. ...

Twombly, 127 S.Ct. at 1965-66 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the

context of a § 1983 civil rights action, that the Twombly

pleading standard applies outside the § 1 antitrust context in

which it was decided.  See Phillips v. County of Allegheny, 515

F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

Twombly so narrowly as to limit its holding on plausibility to

the antitrust context").

10

> Context matters in notice pleading.  Fair notice under
> Rule 8(a)(2) depends on the type of case -- some
> complaints will require at least some factual
> allegations to make out a "showing that the pleader is
> entitled to relief, in order to give the defendant fair
> notice of what the ... claim is and the grounds upon
> which it rests."  Indeed, taking Twombly and the
> Court's contemporaneous opinion in Erickson v. Pardus,
> 127 S.Ct. 2197 (2007), together, we understand the
> Court to instruct that a situation may arise where, at
> some point, the factual detail in a complaint is so
> undeveloped that it does not provide a defendant the
> type of notice of claim which is contemplated by
> Rule 8.  Put another way, in light of Twombly, Rule
> 8(a)(2) requires a "showing" rather than a blanket
> assertion of an entitlement to relief.  We caution that
> without some factual allegation in the complaint, a
> claimant cannot satisfy the requirement that he or she
> provide not only "fair notice," but also the "grounds"
> on which the claim rests.

Phillips, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when

assessing the sufficiency of any civil complaint, a court must

distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more

elements of the claim asserted -- and "[t]hreadbare recitals of

the elements of a cause of action, supported by mere conclusory

statements."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

Although the Court must assume the veracity of the facts asserted

in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation."  Id. at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  Id.

Therefore, after <u>Iqbal</u>, when presented with a
motion to dismiss for failure to state a claim,
district courts should conduct a two-part analysis.
First, the factual and legal elements of a claim should
be separated.  The District Court must accept all of
the complaint's well-pleaded facts as true, but may
disregard any legal conclusions.  Second, a District
Court must then determine whether the facts alleged in
the complaint are sufficient to show that the plaintiff
has a "plausible claim for relief."  In other words, a
complaint must do more than allege the plaintiff's
entitlement to relief.  A complaint has to "show" such
an entitlement with its facts.  <u>See</u> <u>Phillips</u>, 515 F.3d
at 234-35.  As the Supreme Court instructed in <u>Iqbal</u>,
"[w]here the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct,
the complaint has alleged-but it has not
'show[n]'-'that the pleader is entitled to relief.'"
This "plausibility" determination will be "a
context-specific task that requires the reviewing court
to draw on its judicial experience and common sense."

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Rule 10(b) of the Federal Rules of Civil Procedure provides:

A party must state its claims ... in numbered
paragraphs, each limited as far as practicable to a
single set of circumstances.  ...  If doing so would
promote clarity, each claim founded on a separate
transaction or occurrence ... must be stated in a
separate count or defense.

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34

(1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane</u>

<u>v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations

omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).[7]

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.  Plaintiff asserts here that he is suing all defendants in both their official and individual capacities.  The claims for damages asserted against the defendants in their official capacities will be dismissed with prejudice, as they are immune from such claims.[8]

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a

---

[7] Plaintiff makes no factual allegations regarding the remote supervisory officials Jennifer Velez and Jonathan Poag, except to assert that they had certain responsibilities as a result of their supervisory positions.  The claims against these individuals appear to be based solely upon an untenable theory of vicarious liability and will be dismissed with prejudice.

[8] Title 28 Section 1915(e)(2)(B)(iii) requires this Court to dismiss this action if it "seeks monetary relief from a defendant who is immune from such relief."

14

state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  Absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).  For the foregoing reasons, all claims for money damages asserted against the defendants in their official capacities will be dismissed with prejudice.

## IV.  ANALYSIS

As noted above, Plaintiff has asserted the following claims: (1) that the delay in transferring him from AKFC to TPH, in March 2009, by Evan Feibusch and the "administrative defendants,"

violated his right to be treated in the least restrictive
setting, (2) that the "administrative defendants" violated his
right to be treated in the least restrictive setting when they
transferred him internally, in March 2010, to the Lincoln Complex
and placed him on the ITU ward without a clinical or medical
justification, (3)-(4) that the "administrative defendants"
violated his right to procedural due process by not having
regulations or hospital policies in place and by not providing
him process prior to the 2010 transfer, (5)-(6) that he was
deprived of his substantive and procedural due process rights
when he was forcibly medicated without psychiatric oversight, and
(7) that Defendant Evan Feibusch has retaliated against Plaintiff
and harassed him, in 2010, because of his litigation and
grievances, instead of exercising professional judgment in making
treatment decisions.

A.   Claims against the "Administrative Defendants"

As noted above, Plaintiff identifies as defendants ten named
individuals with varying levels of responsibility for and
participation in his care and treatment and 38 fictitious
defendants.  Nowhere does he define the individuals he intends to
include within the characterization "administrative defendants."

To hold an individual liable in a § 1983 civil rights
action, a plaintiff must make factual assertions demonstrating
that the defendant had personal involvement in the events

complained of.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207
(3d Cir. 1988); Robinson v. City of Pittsburgh, 120 F.3d 1286,
1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-
91 (3d Cir. 1995).  Those factual assertions must not be
conclusory, but must give the individual defendant fair notice of
what the claim is and the grounds upon which it rests.  See
generally Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009);
Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007); Bell Atlantic
Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007); Fowler v. UPMC
Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009); Phillips v.
County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).
Plaintiff's general allegations of, for example, "harassment,"
against a group characterized solely as "administrative
defendants" fails to give individual defendants fair notice of
the acts that they are alleged to have performed and of the
grounds for liability.  Accordingly, the claims against the
"administrative defendants" will be dismissed without prejudice
for failure to state a claim.

B.   The Due Process Claims

     "Due process requires that the nature of commitment bear
some reasonable relation to the purpose for which the individual
is committed." Foucha v. Louisiana, 504 U.S. 71, 79 (1992)
(citing Jones v. United States, 463 U.S. 354, 368 (1983); Jackson
v. Indiana, 406 U.S. 715, 738 (1972)).  See also Youngberg v.

17

Romeo, 457 U.S. 307, 324 (1982) and Jackson v. Indiana, 406 U.S. 715, 738 (1972)).

In Youngberg v. Romeo, 457 U.S. 307 (1982) the Supreme Court evaluated the substantive Fourteenth Amendment liberty interests retained by civilly-committed mental patients, in freedom from unnecessary restraints. The Court held that involuntarily committed mentally retarded persons retain substantive liberty interests in adequate food, shelter, clothing, and medical care, Youngberg, 457 U.S. at 315, as well as in safety, freedom of movement, minimally adequate or reasonable training to ensure safety, and freedom from undue restraint, id. at 317-19.

These interests, however, are not absolute. Youngberg, 457 U.S. at 319-20. "In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance "the liberty of the individual" and "the demands of an organized society." Id. at 320 (quoting Poe v. Ullman, 367 U.S. 497, 542 (1961)(Harlan, J., dissenting)). In seeking this balance, a court must weigh "the individual's interest in liberty against the State's asserted reasons for restraining individual liberty." Id. In Youngberg, balancing the interests of the State against the rights of involuntarily committed mentally retarded persons to reasonable conditions of safety and freedom from unreasonable restraints, the Court adopted the standard advocated by a concurring judge, below, that

18

"the Constitution only requires that the courts make certain that professional judgment in fact was exercised.  It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made."  487 U.S. at 321 (quoting 644 F.2d 147, 178 (3d Cir. 1980) (Seitz, C.J., concurring)).  Thus, even when treatment decisions violate a protected liberty interest, such decisions made by a qualified professional are presumptively valid;

> liability may be imposed only when the decision by the
> professional is such a substantial departure from
> accepted professional judgment, practice, or standards
> as to demonstrate that the person responsible actually
> did not base the decision on such a judgment.  In an
> action for damages against a professional in his
> individual capacity, however, the professional will not
> be liable if he was unable to satisfy his normal
> professional standards because of budgetary
> constraints; in such a situation, good-faith immunity
> would bar liability.

457 U.S. at 323 (footnote omitted).

Following Youngberg, the Court of Appeals for the Third Circuit held that mental patients have a liberty interest arising under the Fourteenth Amendment to refuse treatment with psychotropic drugs and that the Youngberg standard is applicable to the decision to forcibly administer psychotropic drugs against the will of an involuntarily committed mental patient.  See Rennie v. Klein, 720 F.2d 266 (3d Cir. 1983).

Although the Supreme Court delineated in Youngberg certain substantive liberty interests that arise directly under the

19

Fourteenth Amendment, other liberty interests may be created by state law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Pursuant to N.J.S.A. 30:4-24.2(e)(2), each patient committed to a mental institution in New Jersey has the right to be committed "to the least restrictive conditions necessary to achieve the purposes of the treatment."  The U.S. Court of Appeals for the Third Circuit has previously found that the provisions of Title 30 of the New Jersey Revised Statutes generally "suggest a state right to reasonable care."  Scott v. Plante, 691 F.2d 634, 638 (3d Cir. 1982) (finding that New Jersey law provides a state right to reasonable care pursuant to N.J.S.A. 30:4-24.2(e)(1)).  The Scott Court stated further that "[i]t is public policy of the state to provide adequate residential facilities for the treatment of mental illness" and that this policy gives rise to "explicit patient rights granted in Title 30."  Id.

1.   The 2008-09 Transfer

With respect to the 2008-09 transfer claim, Plaintiff asserts the following:

> 14.   ... After being hospitalized at AKFC nearly 3 years, and after a Krol status hearing it was determined that plaintiff was entitled to be transferred to a hospital with a "lesser restrictive setting" for the purpose of treatment.

15. However, because of Evan Feibusch and the administrative defendants of TPH and administrative defendants of the Division of Mental Health Services, plaintiff remained confined at the maximum secured hospital at AKFC more than what was medically necessary, and under harsher conditions of confinement for an unreasonable period of time.

16. Plaintiff was refused three times by Evan Feibusch and the administrative defendants of TPH before being transferred to TPH on March 17th, 2009.

17. The administrative defendants' decision to deny plaintiff's transfer, had created an unreasonable delay, that was a substantial departure or deviation that was not based on professional judgment, standard, practice or skill that actually demonstrates that such decision was not based on professional judgment; but to cause harm to plaintiff by remaining at AKFC for an extra four months.

18. Defendants Jonathan Poag and Jennifer Velez had a responsibility once the administrative defendants of TPH and Evan Feibusch had denied plaintiff's transfer to TPH to make sure there was no untimely delay in effectuating plaintiff's right to be treated in a hospital ofthe least restrictive setting or conditions of confinement.  However, they had failed to act and which allowed the unreasonable delay of plaintiff being transferred to TPH on March 17th, 2009.

(Complaint, ¶¶ 14-18.)[9]  Plaintiff does not identify the individuals encompassed by the term "administrative defendants." Accordingly, Evan Feibusch is the only individual defendant who can arguably be deemed to have received notice, sufficient to

_____

[9] As noted previously, the claims against Defendants Jonathan Poag and Jennifer Velez are based solely on an untenable theory of vicarious liability and will be dismissed with prejudice.

comply with Rule 8, that Plaintiff is asserting a claim against him arising out of the alleged delay in transferring him from AKFC to TPH in March 2009.  Even as to Mr. Feibusch, however, the Complaint fails to state a claim.

Guided by the Youngberg/Rennie/Scott line of precedent, this Court has previously held that the state-created right to be committed to the "least restrictive conditions necessary to achieve the purposes of the treatment," set forth in N.J.S.A. 30:4-24.2(e)(2), is a liberty interest cognizable under the Fourteenth Amendment.  See Brandt v. Ganey, 2008 WL 5416393 (D.N.J. Dec. 22, 2008); Brandt v. Monroe, 2006 wL 1468394 (D.N.J. May 24, 2006) (delay in transfer to "least restrictive environment," if proven to be done for intentional, punitive, or unreasonable purposes, could provide a basis for relief).

Here, however, Plaintiff has alleged no facts suggesting a basis for liability on the part of Evan Feibusch.  To the contrary, Plaintiff has asserted only that Mr. Feibusch denied transfer three times, and that Plaintiff was not transferred for a period of almost four months.  Nothing in those facts suggests "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment."  Plaintiff seeks here to base the liability of Mr. Feibusch solely on a conclusory allegation that the delay

22

represented a substantial departure from accepted professional judgment.  This conclusory pleading, merely restating the standard for liability, is not sufficient to satisfy the requirements of Rule 8 that the Complaint plead <u>facts</u> suggesting liability.  The claim arising out of Plaintiff's transfer in March 2009 is dismissible for failure to state a claim.

   2.   <u>The Harassment Claim</u>

   Plaintiff alleges that chief psychiatrist Evan Feibusch engaged in a pattern of harassment in response to Plaintiff's internal complaints and litigation about the conditions at TPH. Although the Complaint is not a model of clarity, the Court construes the Complaint as asserting that Defendant Feibusch was instrumental in Plaintiff's internal transfer on March 2, 2010, to the ITU in the Lincoln Complex, a transfer that Plaintiff characterizes as being without a medical or therapeutic basis, for retaliation and for the purpose of causing him to act out and provide a justification to transfer him to another facility.

   Once again, this is a claim that Defendant Feibusch violated Plaintiff's due process rights as set forth in <u>Youngberg</u> and its progeny.  The allegation that Defendant Feibusch subjected Plaintiff to an inappropriate transfer in retaliation for having exercised his rights to freedom of speech and to access the courts, rather than as an exercise of professional judgment, is

sufficient to avoid dismissal at this preliminary stage of this litigation.

    3.  <u>The Claim of Involuntary Medication</u>

    As noted above, the Court of Appeals for the Third Circuit held that involuntarily-committed mental patients have a liberty interest arising under the Fourteenth Amendment to refuse treatment with psychotropic drugs and that the <u>Youngberg</u> standard is applicable to the decision to forcibly administer psychotropic drugs against the will of an involuntarily committed mental patient.  <u>See</u> <u>Rennie v. Klein</u>, 720 F.2d 266 (3d Cir. 1983). Accordingly, Plaintiff's claim that Nurse I and Nurse II forcibly medicated him with antipsychotic drugs, in March 2010, without consulting with a psychiatrist and for their own convenience, is sufficient to avoid dismissal at this preliminary stage of the proceeding.

V.  <u>CONCLUSION</u>

    For the reasons set forth above, the "harassment" and "forced medication" claims will be permitted to proceed; all remaining claims will be dismissed.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome the deficiencies noted herein,

Plaintiff will be granted leave to submit a proposed amended complaint.[10]

An appropriate order follows.


                                        s/Freda L. Wolfson
                                        Freda L. Wolfson
                                        United States District Judge

Dated: March 29, 2011

---

[10] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.